**In re ADVANCED ELECTRONICS, INC., Debtor.**

**Bankruptcy No. 5–89–00221.**

United States Bankruptcy Court, M.D. Pennsylvania.

Nov. 16, 1989.

J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for trustee John H. Doran.

**504**

Allen E. Ertel, Allen E. Ertel & Associates, Williamsport, Pa., for objector.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Before the Court is a Motion of the Trustee, John H. Doran, Esq. (hereinafter "Trustee") seeking authority to pay Involuntary Gap Period Wages. An objection was filed by Allen E. Ertel & Associates, presumably on behalf of Phillip Courtright, Vice President, Secretary and Treasurer of the debtor, Advanced Electronics, Inc. For the reasons provided herein, we find the Objections to be without merit and, therefore grant the Trustee's Motion to Pay Involuntary Gap Period Wages to Employees as listed and identified on Exhibit "A" attached to the Motion for the payroll period from March 20, 1989 through April 7, 1989.

This matter was commenced by an involuntary petition on March 17, 1989 and subsequently on April 18, 1989 relief was granted under Chapter 11 of the United States Bankruptcy Code. 99 B.R. 245. Thereafter, the Trustee filed the instant Motion to request authority to pay certain employees gap wages for the approximately one month period from the involuntary filing to the Order for relief. The Trustee argued that during this gap period the employees worked without pay and contributed significantly to the continued operation of the debtor's business. During this time the employees maintained contact with customers and suppliers and continued to take purchase orders although the orders could not be shipped. The Trustee vehemently argues that the debtor, without the substantial efforts of the employees, would have had a very difficult time starting up after the Trustee was appointed and maintaining the enterprise while reducing a substantial secured debt to Chrysler First Credit. The Trustee, recognizing the valuable contribution of the named employees and in order to keep the employees' continued loyalty, asserts that it is in the best interests of the estate to authorize payment of the wages earned during the gap period.

The objection filed is threefold: (1) Whether or not the employees were actually employed in the ordinary course of business during the gap period; (2) Is Mark Reeder's claim limited to $2,000 or less by Bankruptcy § 507(a)(2), § 502(f), § 502(b)(4) and § 507(a)(3); and (3) Is the request of the Trustee to pay only certain employees and to reward and insure their loyalty arbitrary and not in the best interests of the estate?

The objector claims that the employees were not employed in the ordinary course of business during the involuntary gap period. These employees are gap creditors. "Gap creditors are creditors who extend credit, lend money, or generally have claims which arise during the gap period between the filing of the case and the entry of an order for relief." See *Collier on Bankruptcy*, 15th ed, ¶ 303.36 at 303–125. The objector argues that the normal business operation was the ordering, selling, and packing of shipments of computer related items. Additionally, the objector argues that these employees knew of the risk of continuing to be employed by this debtor and made a decision to take that risk while the general creditors, "who will be made to come after these persons in their claims, did not even have such an opportunity to choose whether or not to participate in the risk." (See Objection to Trustee's Proposed Gap Period Wages).

■ We find these objections meaningless and at best convenient under the circumstances. Often a business put into an involuntary Chapter 11 bankruptcy must, in the ensuing days and the weeks after the filing of the involuntary, struggle to keep existing business relationships intact. In fact, the testimony elicited at the hearing on this matter paints an all too familiar scenario of the debtor making attempts to alleviate concerns of its creditors and other business relations concerning the cessation of the business enterprise. During the gap period the employees made phone calls to customers, opened mail, received fax correspondence, and generally spent their time

trying to resume normal business operations and relations. Orders for the shipping of computer related items were continued although the actual shipment was withheld until normal operations resumed.

These employees, like all other gap creditors, did in fact take a risk by continuing their employment with the debtor. The Bankruptcy Code, while not fully protecting these gap creditors, does provide some protection by way of a second priority which is above all other unsecured general creditors. That priority is found in 11 U.S.C. § 507(a)(2). Because these employees are considered gap creditors they do not fall into the same position as general unsecured creditors. Consequently, this Court will not penalize them because they have exhibited a loyalty and have worked diligently to help the debtor through the involuntary gap period. Consequently, we find no merit in the objector's argument that the employees were not performing their duties in the ordinary course of business.

■ The next objection concerns the reasonableness of the wages of Mark Reeder and his wife. Mr. Reeder is the President of the debtor. The objector asserts that Reeder's claim should be limited to $2,000 or less under § 507(a)(2), § 502(f), § 502(b)(4) and § 507(a)(3). Under 11 U.S.C. § 502(f), gap period claims are to be allowed or disallowed as if they were actually prepetition claims. Section 502(f) provides as follows:

"(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

The only restriction found in § 502(f) that could possibly concern Mr. Reeder's wages is that he is an insider and an insider's claim under § 502(b)(4) may not exceed the reasonable value of such services. The Trustee determined that the wages were reflective of the true value of each employee's services. Section 507(a)(3) does not apply to Involuntary Gap Period Wages and is not applicable in this case. No evidence was presented contrary to the Trustee's position and we, therefore, find that even though Mr. Reeder is the President of the corporation the extent of his claim for wages is reasonable under the circumstances and will be granted in its entirety. We make the same determination for wages due and owing to Kimberly Reeder, Mark Reeder's wife.

The next argument concerns whether or not the payment of the wages to those employees listed on Exhibit "A" to the Trustee's Motion is arbitrary and not in the estate's best interest because there are other employees not listed who are also owed wages. We note that these alleged employees, or others on their behalf or parties in interest may make proper application with this court for consideration of payment of their gap wages.

Finally, the most compelling argument suggested by the objector is the timing of the proposed payments of the § 507(a)(2) priority gap period wages. We direct the objector's attention to the following:

"When a 'gap' claim arises in a [sic] involuntary chapter 11 reorganization and an order for relief is entered, the question arises whether after an order for relief is entered, and during the debtor in possession period, the 'gap' creditor may be paid on its claim considering that 'gap' claims are considered to have arisen prior to the date of the filing of the petition. If they are not paid and the debtor has sufficient funds this may sever a business relation needed by the debtor in possession. Clearly, if the debtor proposes a plan, the 'gap' creditor is entitled to be paid cash under the plan equal to the allowed amount of the claim. Therefore an argument may be made that if the prospects for confirming a plan are good, and the debtor has sufficient funds to pay the 'gap' creditor, a

payment after the order for relief may be appropriate under these limited circumstances."

*Collier on Bankruptcy,* Volume 2, 15th ed., ¶ 303.36 at 303–126. Evidence was provided to this Court reflecting that the major secured creditor, Chrysler First Wholesale Credit, had its debt of approximately $858,000 paid down to a sum not in excess of $50,000. Even though the debtor-in-possession went through a trying business period it was able to keep expenses down while paying a substantial secured debt and making a profit approximating $20,000 for the first quarter of operations ending in July of 1989. All the evidence indicates that the prospects for confirming a plan are excellent and that sufficient funds are now available and will be available in the future to pay these gap creditors. The gap employees are to receive a second priority distribution. Those who could conceivably be prejudiced by payment of these wages now as opposed to in the future, such as secured creditors and administrative priority claimants, did not object to the Trustee's Application.

Consequently, we find that the objections filed to the Trustee's Motion are without merit and, therefore, the Trustee's Motion to Pay the Involuntary Gap Wages to those employees and in the amounts represented on Exhibit "A" to the Motion are hereby granted.

IT IS SO ORDERED.